Matter of Polonski v Town of Islip (2023 NY Slip Op 05171)

Matter of Polonski v Town of Islip

2023 NY Slip Op 05171

Decided on October 12, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 12, 2023

535424
[*1]In the Matter of the Claim of Theresa Polonski, Claimant,
v
Town of Islip et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 6, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Stewart, Greenblatt, Manning & Baez, Syosset (Thomas A. Lumpkin of counsel), for appellants.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for respondent.

Fisher, J.
Appeal from a decision of the Workers' Compensation Board, filed April 6, 2022, which ruled that decedent's death was causally-related to his employment.
Claimant's husband (hereinafter decedent), a highway maintenance crew leader, underwent spinal fusion surgery in May 2018 and remained out of work until January 14, 2019.[FN1] Both prior to and following his return to work, decedent requested — consistent with his surgeon's recommendation — to be assigned less strenuous duties; instead, upon returning to work, he was tasked with performing demolition work on a facility bathroom. Decedent left work at 4:00 p.m. on January 17, 2019, reportedly feeling exhausted. However, approximately nine hours later, decedent was called back into work to clear snow from local roadways. Thereafter, around 2:30 p.m. on January 18, 2019, decedent contacted his spouse and advised his supervisor that he was very fatigued and was experiencing chest pains. Decedent was sent alone to a facility break room to rest, where he was found unresponsive approximately 20 minutes later. Decedent was transported to a local hospital where he was pronounced dead, and a subsequent autopsy report listed the cause of death as atherosclerotic and hypertensive cardiovascular disease secondary to, among other things, acute Oxycodone intoxication.
Claimant subsequently filed a claim for death benefits. Both claimant and the self-insured employer tendered reports from their respective experts and, following depositions, a Workers' Compensation Law Judge ruled that decedent's death was causally-related to his employment and awarded benefits. Upon administrative review, the Workers' Compensation Board affirmed. This appeal ensued.
We affirm. "When an unwitnessed or unexplained death occurs during the course of employment, there is a presumption of compensability" that, in turn, obviates the need for the claimant to tender, "in the first instance, prima facie medical evidence of a causal relationship" (Matter of Velano v Kingston Block & Masonry Supply, LLC, 173 AD3d 1517, 1518 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 909 [2020]; see Workers' Compensation Law § 21 [1]; Matter of Fatima v MTA Bridges & Tunnels, 106 AD3d 1327, 1327 [3d Dept 2013]). However, if the employer produces proof sufficient to rebut the presumption, the burden of establishing a causal relationship shifts back to the claimant (see Matter of Velano v Kingston Block & Masonry Supply, LLC, 173 AD3d at 1518; Matter of Fatima v MTA Bridges & Tunnels, 106 AD3d at 1327-1328).
Here, the Board properly found that the autopsy report, which listed the cause of death as atherosclerotic and hypertensive cardiovascular disease, was sufficient to rebut the presumption of compensability (see Matter of Velano v Kingston Block & Masonry Supply, LLC, 173 AD3d at 1518). Accordingly, "claimant bore the burden of establishing — by competent medical evidence — that a causal connection existed between [*2]decedent's death and his employment" (Matter of Murphy v New York State Cts., 201 AD3d 1072, 1073 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Bailey v Binghamton Precast & Supply Corp., 103 AD3d 992, 994 [3d Dept 2013]). In so doing, claimant was not required to demonstrate "that decedent's work-related illness was the sole or most direct cause of [his] death" (Matter of Herris v United Parcel Serv., Inc., 196 AD3d 977, 977 [3d Dept 2021]), as it was sufficient to establish "that the compensable illness was a contributing factor in . . . decedent's demise" (Matter of Murphy v New York State Cts., 201 AD3d at 1073 [internal quotation marks and citations omitted]; see Matter of Smith v Oneida Ltd., 119 AD3d 1021, 1021 [3d Dept 2014]). Notably, "[a] heart injury precipitated by work-related physical strain is compensable, even if a [preexisting] pathology may have been a contributing factor and the physical exertion was no more severe than that regularly encountered by the [decedent]" (Matter of Kilcullen v AFCO/Avports Mgt. LLC, 138 AD3d 1314, 1315 [3d Dept 2016] [internal quotation marks and citations omitted]; accord Matter of Pickerd v Paragon Envtl. Constr., Inc., 161 AD3d 1470, 1470-1471 [3d Dept 2018]). "The resolution of conflicting medical opinions, particularly as they relate to causation, is within the exclusive province of the Board, and its decision will not be disturbed when supported by substantial evidence" (Matter of Boaro v Kings Park Psychiatric Ctr., 104 AD3d 1049, 1050 [3d Dept 2013] [citations omitted]; see Matter of Roberts v Waldbaum's, 98 AD3d 1211, 1211 [3d Dept 2012]).
Claimant's expert testified, consistent with his written report, that claimant had preexisting heart disease, including an enlarged heart with 90% stenosis (or constriction) of the left anterior descending artery, "which is the artery that supplies [blood to] the front of the heart." With respect to the cause of decedent's death, claimant's expert opined that the "arduous . . . work activities" performed by decedent on the day in question increased decedent's pulse and blood pressure, which resulted in ischemia or insufficient blood supply to decedent's heart. Such ischemia, in turn, triggered a fatal ventricular arrhythmia. Although acknowledging the secondary causes of death listed in the autopsy report, including acute Oxycodone intoxication, claimant's expert testified that decedent's work activities were "a direct contributory factor" in the ventricular arrhythmia and decedent's resulting death. In reaching this conclusion, claimant's expert noted that decedent died only four days after returning to work and after experiencing fatigue occasioned by the exertional activities that decedent was asked to perform in a relatively short period of time. The employer's expert agreed that decedent suffered a fatal cardiac arrhythmia but was of the view that such arrhythmia predominantly was attributable to decedent's "underlying [*3]cardiac conditions, as well as the toxic effects of the medications that were in his system." That said, the employer's expert acknowledged that decedent's "work-related responsibilities could have also been, in part, a contributory factor [in] the occurrence of the arrhythmia." To the extent that the respective expert opinions differed, the Board was free to resolve such conflict in favor of claimant (see Matter of Pickerd v Paragon Envtl. Constr., Inc., 161 AD3d at 1471; Matter of Kilcullen v AFCO/Avports Mgt. LLC, 138 AD3d at 1316) and, crediting the testimony of claimant's expert, the Board's finding that decedent's death was causally-related to his employment is supported by substantial evidence (see Matter of Roberts v Waldbaum's, 98 AD3d at 1211-1212; compare Matter of Bordonaro v Genesee County Sheriff's Off., 148 AD3d 1507, 1508-1509 [3d Dept 2017]; Matter of Fatima v MTA Bridges & Tunnels, 106 AD3d at 1328). The employer's remaining arguments on this point, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Clark, J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: Decedent, who suffered from chronic back pain, had been prescribed Oxycodone and medical marihuana for a number of years and was taking such medications at the time of his death.